CITY OF OKLAHOMA CITY, a Municipal Corporation, Plaintiff in Error,

v.

Lewie LACY, G. B. Entz, Ray Lindsey and Board of County Commissioners of Oklahoma County, Oklahoma, Defendants in Error.

No. 38174.

Supreme Court of Oklahoma.

March 10, 1959.

A. L. Jeffrey, Municipal Counselor, William J. Ross, Asst. Municipal Counselor, Robinson, Shipp, Robertson & Barnes and Leon Shipp, Oklahoma City, for plaintiff in error.

John H. Halley, and Edward M. Box, Oklahoma City, for defendants in error.

William A. Thie, Denison, Tex., Satterfield, Franklin & Harmon, Oklahoma City, for amicus curiae.

BLACKBIRD, Justice.

The broad question plaintiff in error seeks to have determined in this appeal is whether or not an area lying south of a line which would coincide with an east extension of Oklahoma City's Northeast 36th Street, and east of such a line extending north from said City's North Bryan Street, purporting to have been incorporated as the Town of Forest Park, exists (at all times involved in this controversy) as a separate town, or whether, by the purported annexation proceedings described herein, it has become a part of the City of Oklahoma City.

It is helpful in making an appraisal of the controversy to note some of its factual background and refer to the statutory provisions applicable thereto.

The basic provisions of our statutes authorizing cities to annex territory adjacent to their corporate limits is Tit. 11, O.S.1951 § 481. Prior to May 22, 1956, the Forest Park territory, or area (referring to the land area within the limits of the present purported Town of Forest Park) was not adjacent to Oklahoma City's limits. However, on that date, said City's city council passed Ordinance No. 7798, which purported to annex adjacent territory lying west of North Bryan Street. This ordinance contained a so-called "emergency" provision purporting to make it effective "after its passage, as provided by law." Later, on the same day, said City Council also passed its Ordinance No. 7800, purporting to annex the Forest Park area, and this ordinance also contained a so-called "emergency" provision worded the same as the one in Ordinance No. 7798. On the next day, May 23, 1956, both of said ordinances were published in a newspaper of general circulation in Oklahoma City or Oklahoma County, for the first time that either their titles or complete texts had ever been published. On the same date, after a census of the inhabitants residing within the Forest Park area had been taken two days before, certain persons, apparently residents of the said County, gave notice as the "Committee For Incorporation" that, under the authority of Tit. 11, O.S.1951 § 971 et seq., they would, on or after June 22, 1956, present to Oklahoma County's Board of County Commissioners their petition for incorporation of said area "into the town of Forest Park * * *". Thereafter, on June 25, 1956, said Board entered its order, after hearing on a petition previously filed for that purpose, directing the holding of an election in that area to determine whether Forest Park should be an incorporated town. Thereafter, on July 16, 1956, said Board of County Commissioners issued its order approving the election held in accord with its previous order; and later, in the due course of the administration of said incorporated Town's affairs, the defendants in error were selected as members of its Board of Trustees; and have acted in that capacity since.

As a result of the above described conflict in the named Town's and City's jurisdiction over the Forest Park area, and a difference of opinion as to whether it had become an annexed part of Oklahoma City or, instead, was a separate, incorporated town, the present action, in the nature of quo warranto, was commenced in October, 1956, in the name of the State of Oklahoma on the relation of the County Attorney of Oklahoma County as plaintiff, against the defendants in error, as defendants.

In said plaintiff's petition, it relied upon the aforecited Ordinance No. 7800, as having validly annexed the Forest Park area to Oklahoma City, before the above-described town incorporation proceedings were commenced; and a copy of said Ordinance was attached to said petition. Briefly, and in substance, plaintiff further alleged some of the facts herein-above shown concerning the purported incorporation of the Town of Forest Park; further alleged that the persons named as

defendants were attempting to "usurp official authority as officials of a separate individual municipality which does not exist"; and alleged various reasons for, and prayed for, an adjudication of the status of the Forest Park area and a determination that the Town of Forest Park does not exist; that defendants have no official status; and that the area "embraced within what is claimed to be the Town of Forest Park" was legally annexed by Oklahoma City's Ordinance No. 7800.

It is unnecessary to describe in detail the procedure by which the action acquired additional parties, and the issues were joined between them previous to the trial. Suffice it to say that in defendants' first "Amendment" to their answer they alleged that Oklahoma City's Ordinance No. 7800, supra, is void because the territory described therein was not, at the time it was enacted, adjacent to said City. Analysis of some of the other allegations in said Amendment, in the light of the position defendants assumed at the trial and herein re-assert, reveals that one of the grounds upon which the foregoing allegation was based was that on May 22, 1956, when said Ordinance No. 7800 was passed by the City Council, Ordinance No. 7798, which purported to annex territory between the Forest Park area and what was then Oklahoma City's eastern boundary and which annexation had to be completely effective at that time in order to render "adjacent" to said City, the territory described in Ordinance No. 7800, was wholly void and ineffective.

. Pursuant to separate orders of the court, entered before the trial, the Board of County Commissioners of Oklahoma County and the City of Oklahoma City became defendants, or interveners, in the action.

By its answer, the City objected to being made a party to the action, and then merely adopted the allegations asserted by the State in said plaintiff's petition; and joined in the prayer for relief therein contained.

In its answer and the amendment thereto, the Board of County Commissioners pleaded, among other things, in substance, that the County Attorney who brought the action for the State, as plaintiff, was estopped to maintain the action by reason of having actively participated in the proceedings before said Board for the incorporation of the Town of Forest Park; and that said Board's order incorporating said town, being unappealed from, was res judicata of all questions involved in the present action.

Upon trial of the cause before the court, judgment was rendered in favor of the defendant members of Forest Park's Board of Trustees and the Board of County Commissioners, but against the State, as plaintiff, and the defendant City. In so ruling, the trial judge specifically found, among other things, that the Town of Forest Park was duly and regularly organized as provided by law and that it existed, and was functioning, as such; and that Oklahoma City's Ordinance No. 7800, purporting to annex the territory included therein, is void.

From said judgment the City of Oklahoma City, hereinafter referred to merely as "the City", has lodged the present purported appeal, without the State, in whose name the action was instituted as plaintiff, being a party or appearing herein in any capacity whatsoever.

The members of Forest Park's Board of Trustees and Oklahoma County's Board of County Commissioners, hereinafter referred to collectively merely as "Trustees", first filed a motion to dismiss the within cause here, on the ground of this Court's asserted lack of jurisdiction. Said motion was overruled, and the parties then filed their respective briefs dealing chiefly with the merits of the judgment appealed from. The Missouri-Kansas-Texas Railroad has also filed a "Brief Amicus Curiae."

Under "Proposition One" of its brief, the City maintains that it annexed the

Forest Park area before said area was purportedly incorporated as the Town of Forest Park and consequently now has exclusive jurisdiction thereof.

Both of said City's Propositions Two and Three concern the Trustees' attack on the validity of Ordinance No. 7800, by which the City contends said annexation was accomplished. Said ordinance describes Oklahoma City's corporate limits, at that time as: "Beginning at a point * * * established by Ordinance No. 7798 * * *", and contains the finding, among others, in its Section 3, that the area described therein (in Ordinance No. 7800) "is adjacent to the present city limits, * * *". Since the territory purportedly annexed by Ordinance No. 7798 lies between the Forest Park area and what was Oklahoma City's corporate limits previous to May 22, 1956, on which date both Ordinances No. 7798 and 7800 were passed, then, if No. 7798 had not yet become effective on that date, it is true, as the Trustees contend, that the Forest Park territory was *not then* "adjacent" to the City's corporate limits and the City Council's finding in Ordinance No. 7800 that it was, is in reality untrue or incorrect; and it may be, as the Trustees contend, that the City Council is without jurisdiction, under Section 481, supra, to annex the Forest Park area as "adjacent" territory.

One of the reasons the Trustees claim that Oklahoma City's corporate boundary had not been effectively extended by Ordinance No. 7798, to meet, or adjoin, the Forest Park area, on May 22, 1956, (when Ordinance No. 7800 recited, in substance, that it had), is that said Ordinance No. 7798 had not become effective as an emergency measure because it had not then been published as provided by statute. Tit. 11, O.S.1951 § 579, provides:

" * * * all ordinances shall be published in full except as provided in Section 2 (Sec. 579.1) hereof as soon as practicable after they are passed in some legal newspaper of general circulation published within such city or town, * * *; provided, that any ordinance of a city or town, if passed with the emergency clause attached, is not required to be published in full except as provided in Section 2 (Sec. 579.1) hereof, but may be published by title only, and such publication by title shall be deemed a legal publication of such ordinance, and *no ordinance* having any object beyond the bare appropriation of money *shall be in force until published as herein provided.*" (Emphasis ours).

Section 579.1 of said Title provides, in substance, among other things, that ordinances which are compilations of rules and regulations relating to "protection of the public health, if passed with the emergency clause attached, may be published by title and a condensed gist or summary of contents thereof in a newspaper as provided in Section 1 (Sec. 579) hereof. * * *."

Section 579.2 of said Title provides:

"All ordinances duly passed by the legislative bodies of cities and towns except as otherwise provided in Section 2 (Sec. 579.1) hereof shall be published in a legal newspaper having general circulation in said city or town. *Unless published or posted as required by law, same shall be null and void.*" (Emphasis ours).

Under its Proposition Three, the City contends that since it is a charter city, the effective date of its emergency ordinances is controlled, not by the above-quoted statutory provisions, but by its charter's Art. 2, Sec. 23, which provides, in part, as follows:

"Every ordinance adopted shall be published once in a newspaper published and of general circulation in the city and shall not take effect until thirty days after such publication, *except emergency ordinances passed as provided for in this article, which shall take effect upon passage*

and be so published upon the following day, subject always to the provisions of the referendum; * * *." (Emphasis ours.)

The Trustees counter with the argument that the rule of control by city charter cannot apply to ordinances such as those purporting to accomplish annexations, or any other ordinance extending a city's powers beyond its corporate limits, citing Barton v. Stuckey, 121 Okl. 226, 248 P. 592, 593, and other authorities.

Under its Proposition Two, the city argues, *inter alia*, that the recitation in Ordinance No. 7800 of the City Council's finding of the jurisdictional fact that the Forest Park area "is adjacent to the present city limits, * * *" is subject to collateral attack *only* by the State, citing Jones v. City of Oklahoma City, 207 Okl. 431, 250 P.2d 17, and other cases, and McQuillin on Municipal Corporations (3rd Ed.), Vol. 2, Sec. 7.41. With reference to the subject of attacking city ordinances, the cited Authority has the following to say in Section 20.14, Vol. 6 of his said Work:

"Of course, *in an action to enforce an ordinance, the defense may be set up* that the municipal corporation had no power to pass the ordinance or that it was never legally enacted. Neither of such *defenses* is viewed as a collateral attack." (Emphasis ours.)

If the present action could correctly be regarded as "an action to enforce" Ordinance No. 7800, then it would seem that, under the quoted statement, the Trustees' defense of its invalidity might have been properly sustained; but, said Ordinance was not void on its face by reason of the territory it purported to annex being not adjacent to Oklahoma City, because such fact of "non-adjacency" does not appear from reading the ordinance itself. In this connection, notice 62 C.J.S. Municipal Corporations § 206d, at note 96. Further argument on behalf of the City is to the general effect that if one could (as the Trustees were apparently allowed to do in the trial of this cause) go behind Ordi-

nance No. 7800 to show its invalidity by establishing that a jurisdictional prerequisite recited therein, did not, in fact, exist, because Ordinance No. 7798, on which the existence of such fact depended, was not then effective for not having been published, then a very unstable situation would result, and many improvements that have been made, and paid for in Oklahoma City, might, years later, be "divorced" therefrom and excluded from its control. Neither of the parties cites or discusses the possible applicability to Ordinance No. 7800, and its relation to Ordinance No. 7798, of the rule stated at 62 C.J.S. Municipal Corporations § 430, concerning "dependent ordinances."

In contradistinction to the foregoing argument of the City that only the State can make the claimed "collateral" attack made in this cause by the Trustees, the latter, in effect, renew their previous motion to dismiss this appeal by again challenging the jurisdiction of this Court herein, pointing out that the action was instituted as one in the nature of quo warranto by the State, and contending that the trial court's judgment against said plaintiff, or contrary to its position in said court, cannot herein be reversed without the State's being a party to this purported appeal. The Trustees' position seems to be supported by the decision of this court in State ex rel. McFadyen v. Holtzclaw, 151 Okl. 163, 2 P.2d 1022, 1023, which was also commenced as an action in the nature of quo warranto. There, we said:

"The case at bar being one of a public nature and one that must be prosecuted in the name of the state by the officers designated by law to file and prosecute the same, and the officers designated by law to prosecute the action not having prosecuted this appeal and not appearing in this court, the judgment of this court is the appeal should be and is dismissed."

In this connection, see also Tit. 12, O.S. 1951 §§ 1532 and 1533. Though the cited case sought adjudication of the right of a

school district, rather than a town, to exist, we see in this difference of fact no reason why the decision there is not fully applicable here; and the City cites no authority to the contrary. In accord therewith, we therefore express no opinion on any of the arguments pro or con of the case's merits, but hereby dismiss the within purported appeal.

WILLIAMS, V. C. J., and HALLEY, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., and WELCH, JOHNSON and JACKSON, JJ., dissent.